173 F.Supp.2d 1315 (2001)
In re SUNSTAR SECURITIES HEALTHCARE LITIGATION
Gina Vincelli, on behalf of herself and all others similarly situated, Plaintiffs,
v.
National Home Health Care Corporation, Steven Fialkow, Frederick H. Fialkow, Warren D. Stowell, Bernard Levine, Maria Escura, Jack Shields, David A. Jesse, Defendants.
No. 6:00CV172-ORL-31JGG.
United States District Court, M.D. Florida, Orlando Division.
October 2, 2001.
*1316 *1317 Robert R. Adler, Kenneth Vianale, Maya Saxena, Milberg, Weiss, Bershad, Hynes & Lerach, Boca Raton, FL, for Plaintiffs.
Michael J. Pucillo, C. Oliver Burt, III, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, West Palm Beach, FL, Carl Francis Schoeppl, Daniel J. Becka, Schoeppl, Burke & Kayton, P.A., Boca Raton, FL, Katherine C. Ash, Parker Chapin LLP, New York City, for Defendants.

ORDER
PRESNELL, District Judge.
This cause comes before the Court on Defendants' Motions to Dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint (Doc. Nos.86, 88, 90). The Court previously dismissed Plaintiffs' First Amended Class Action Complaint on the ground that the allegations of securities fraud did not comply with the particularized pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995. Plaintiffs subsequently amended their Complaint for a second time, and Defendants again moved to dismiss. The Court held a hearing on this matter on September 10, 2001. Upon review of the additional allegations in the Second Amended Complaint and upon consideration of the parties' briefs and oral argument, the Court again concludes that the Plaintiffs have failed to state a claim for relief for securities fraud. Accordingly, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Second Amended Complaint must be dismissed.

I. BACKGROUND
The background of this action has been fully detailed in this Court's prior Order of February 16, 2001 and, for the sake of brevity, will not be repeated here. The Plaintiffs of this purported securities fraud class action are purchasers of Sunstar Healthcare Incorporated ("Sunstar") securities between June 15, 1998 and December 14, 1999. Sunstar is a managed healthcare company whose wholly-owned subsidiary, Health Plan, provided health care benefits through health maintenance organization ("HMO") contracts.
There are three groups of Defendants: (1) officers of Sunstar; (2) National Home Healthcare Corp., a significant shareholder of Sunstar; and (3) outside directors of Sunstar. Count I of the Second Amended Complaint alleges a violation of section 10(b) and SEC Rule 10b-5 against all Defendants, and Count II alleges a section 20(a) controlling person claim against various Defendants.
The Court has previously dissected each of the allegations in the First Amended Complaint and explained why those allegations were insufficient. Thus, the Court will turn directly to the new allegations of the Second Amended Complaint after summarizing the heightened pleading standards for claims brought for violation of the Securities Exchange Act.

II. PLEADING STANDARDS

A. Motion to Dismiss
For purposes of a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. Fed.R.Civ.P. 12(b)(6); see also Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir.1994). Normally, a court must limit its consideration to the pleadings and written instruments attached as exhibits thereto; however, where a complaint alleges violations of securities laws, the court may consider certain other materials, such as documents filed with the Securities Exchange Commission (the "SEC"). See Bryant v. Avado Brands, Inc., 187 F.3d *1318 1271, 1276-81 (11th Cir.1999); Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir.1999). In deciding the instant motion to dismiss, the Court has considered the allegations of the Complaint, the contents of relevant SEC filings, and documents referenced in the Second Amended Complaint.

B. The Securities Exchange Act
Section 10(b) of the Securities Exchange Act imposes private liability on any person who uses or employs "in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe." See 15 U.S.C. § 78j; Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 166, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). The SEC prescribed Rule 10b-5 prohibits the making of an "untrue statement of a material fact or [the omission of any] material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. To state a claim for securities fraud under these provisions, a plaintiff must allege that: (1) the defendant made misstatements or omissions (2) of a material fact (3) with scienter (4) on which the plaintiff relied (5) that proximately caused the plaintiff's injury. See, e.g., Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1018 (5th Cir.1996); Ross v. Bank South, N.A., 885 F.2d 723, 728 (11th Cir.1989). Under section 20(a), liability may also be imposed on a "controlling person" where a securities violation is found. See Brown v. Enstar Group, Inc., 84 F.3d 393, 395-97 (11th Cir.1996). A controlling person is one who has "the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws and [who has] the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." Id. at 396 (quoting Brown v. Mendel, 864 F.Supp. 1138, 1145 (M.D.Ala.1994)) (quotations and alterations omitted).

C. The Reform Act
In 1995, Congress enacted the Private Securities Litigation Reform Act (the "Reform Act") in an effort to "curb abusive securities litigation." Bryant v. Avado Brands, Inc., 187 F.3d at 1286; 15 U.S.C. § 78u-4(b)(1). To accomplish this goal, the Reform Act imposed a heightened pleading requirement for securities fraud claims. Traditionally, courts measured the sufficiency of a plaintiff's allegations of securities fraud against the requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "in all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The requirements of Rule 9(b) are met where the plaintiff sets forth: (1) the content of the precise statement or omission; (2) who made, or failed to make, the statement; (3) where the statement was, or should have been, made; (4) when the statement was, or should have been, made; and (5) what the defendants gained as a consequence. See Brooks v. Blue Cross and Blue Shield of Fla., 116 F.3d 1364, 1371 (11th Cir.1997).
The Reform Act augmented the Rule 9(b) standard by requiring that plaintiffs "specify ... the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). In addition, where allegations in a securities complaint are made on information and belief, the complaint must state with particularity, the facts on which the belief is formed. See id. Finally, plaintiffs must support their scienter allegation by stating "with particularity facts giving rise to a strong inference that the *1319 defendant made the misrepresentations or omissions ... knowingly" or in a "severely reckless manner." 15 U.S.C. § 78u-4(b)(2); 15 U.S.C. § 78j(b); Bryant, 187 F.3d at 1281-87. To successfully aver severe recklessness, the plaintiff must provide more than a "showing of mere motive and opportunity." Bryant, 187 F.3d at 1285-87 (stating that allegations of motive and opportunity, without more, will not demonstrate the requisite scienter). Rather, "[s]evere recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." Id. at 1282 n. 18 (quoting McDonald v. Alan Bush Brokerage Co., 863 F.2d 809, 814 (11th Cir.1989)).

III. ANALYSIS OF PLAINTIFFS' ALLEGATIONS
Plaintiffs again allege that Defendants knew Sunstar was insolvent and masked that insolvency through a reject and delay policy, by understating its liabilities and medical claims payable, by overstating its assets by recording a $4.5 million receivable, and through improprieties relating to a private placement offering. The Court will address each group of allegations in turn.

A. Reject and Delay Policy
In the First Amended Complaint, Plaintiffs attempted to demonstrate that Sunstar had a reject and delay policy through the statements of an anonymous Sunstar employee who alleged that Sunstar's claims department was referred to as a "treatment prevention department." Additionally, Plaintiffs referred to a newspaper article regarding complaints to the Department of Insurance ("DOI"). The Court held these allegations insufficient to show scienter because such anecdotal evidence did not demonstrate the Defendants' knowledge of a reject and delay policy but, at most, merely alleged mismanagement.
In the Second Amended Complaint, Plaintiffs repeat their original allegations and include a second newspaper article about complaints to the DOI. Plaintiffs have also attached numerous additional complaint letters from consumers as well as a due diligence report stating that Sunstar closely monitored suspicious claims. Finally, Plaintiffs refer to a statement made by a Sunstar executive, ostensibly concerning the reject and delay policy, that "we're not guilt-free here."
With regard to the second newspaper article and the additional complaint letters, the Court again finds such anecdotal evidence insufficient as the documents provided do not contain facts showing that Defendants implemented or knew of a reject and delay policy. Moreover, the statement by the Sunstar executive has been taken out of context and does not support an inference of scienter. While Plaintiffs would like to characterize the statement as a "shocking admission" which shows that Defendants knew of a reject and delay policy, the statement actually acknowledged that Sunstar had experienced "administrative hassles" caused by the rapid growth of the company.
Furthermore, even if Plaintiffs' allegations raised a reasonable inference that a reject and delay policy existed and the Defendants knew about it, Plaintiffs have failed to quantify the number of claims affected by such a policy, the dollar amount of claims delayed or unpaid, or the extent to which the practice affected the company's reported financial results. Thus, although the allegations may imply that Sunstar mismanaged customer claims, the allegations do not support a strong *1320 inference that Defendants implemented a policy of rejecting valid claims in order to mislead or defraud shareholders about Sunstar's financial worth. See Malin v. Ivax Corp., 17 F.Supp.2d 1345, 1359 (S.D.Fla.1998) (plaintiffs did not adequately plead scienter merely by pleading the existence of an undisclosed "massive practice of shelf-stock adjustments on numerous pharmaceutical products" because the complaint was devoid of fact supporting any claim that the practice existed, which products and customers were affected, the amount of the inventory adjustments, and the extent to which the adjustments affected Ivax's financial projections).

B. Understatement of Medical Claims Payable
Plaintiffs also allege that the Defendants intentionally understated medical costs and liabilities for medical claims payable in order to post inflated financial results and conceal Sunstar's insolvency during the Class period. In the Second Amended Complaint, Plaintiffs again support their claim with unsupported allegations from a DOI lawsuit, claims that Sunstar's officers monitored third-party administrators, and claims that individual Defendants signed Sunstar's financial statements containing the alleged misrepresentations and omissions.
The Second Amended Complaint, like its predecessor, fails to allege particularized facts which, if true, raise a strong inference that the Defendants knew or should have known that Sunstar was deliberately understating its medical claims. For example, the Second Amended Complaint does not indicate the actual amount of Sunstar's liabilities at the relevant times, the true net worth of Sunstar during each reporting period, or the amount by which Sunstar overstated or understated these figures. Rather, the Second Amended Complaint merely recites the numbers reported in Sunstar's published reports and then flatly avers that the numbers were false. Such generalized pleading is insufficient under the Reform Act.

C. Overstatement of $4.5 Million Receivable
Plaintiffs' principal allegation of fraud concerns Sunstar's recording of a $4.5 million receivable for claim overpayments in its August 16, 1999 quarterly report. According to Plaintiffs, the Defendants listed the $4.5 million receivable as an asset when it knew or should have known that the receivable was bogus, uncollectible, and not allowable as an asset. In support of these allegations, Plaintiffs direct the Court to a letter DOI received from KPMG, one of the consulting firms hired by Sunstar to certify the $4.5 million overpayment of claims. Despite Plaintiffs' strangled interpretation of the letter as evidence of fraud, the KPMG letter merely shows that KPMG acknowledged its uncertainty about the allowability of the $4.5 million receivable two months after it was booked. There is no suggestion in the KPMG letter, or elsewhere in the Second Amended Complaint, that KPMG or the other consulting firm retained by Sunstar to review and certify the receivable failed to perform a random claim audit and identify the overpayments to health care providers during the second quarter of 1999.
KPMG's after-the-fact expression of uncertainty regarding the applicability of an ambiguous regulation cannot translate into a strong inference that the Defendants concocted a bogus receivable or that Defendants should have known that the $4.5 million receivable was not a legitimate asset at the time it was booked. Accordingly, because Plaintiffs have not pleaded facts to show the receivable was false or uncollectible when it was booked, the Court will not draw an inference that the *1321 Defendants knew or should have known that listing the $4.5 million receivable was fraudulent.

D. The Private Placement
Plaintiffs also claim there are material differences between the Private Placement Memorandum ("PPM") and the Information Statement on Form 14C that Sunstar publicly filed with the SEC on March 9, 1999. According to Plaintiffs, the PPM revealed adverse financial information to private investors, while that same data was concealed from the public on the Information Statement. The PPM stated that Sunstar was "dependent" on the proceeds of the sale to "maintain compliance" with certain Florida statutory equity requirements. The Information Statement provided that a portion of the proceeds from the private offering would be used to maintain the minimum surplus required by Florida's HMO regulations and for the statutory deposit. The PPM stated that "the inability to obtain additional financing will have a material adverse effect on the Company," while the Information Statement warned that "failure to meet or maintain compliance with these requirements could result in an order of compliance, delinquency proceedings, suspension of the authority of the Company to enroll new subscribers, imposition of administrative supervision, [and] revocation of the Company's Certificate of Authority." In addition, the Information Statement disclosed that the Company had already been informed by NASDAQ that its net tangible assets had fallen below the $2 million maintenance requirement. Thus, although semantic hairsplitting reveals minor differences in the language used in the PPM and the Information Statement, there is no meaningful disparity between the warnings contained in these documents.
Throughout the Class Period, Sunstar reported that it was not profitable, that its working capital was in decline, and that without the infusion of additional capital, it would not meet the regulatory requirements of the Department of Insurance and the NASDAQ. Sunstar's auditors also disclosed that there was substantial doubt about the company's ability to continue as a going concern. Any investor who relied on these disclosures should have been forewarned of Sunstar's shakey financial condition. Thus, the facts alleged, rather than demonstrating an intent to defraud investors, contradict an inference of scienter. Count One of the Second Amended Complaint must therefore be dismissed.

E. Controlling Person Liability
Because, as demonstrated above, the Plaintiffs have failed to establish the necessary predicate liability under section 10(b) and Rule 10b-5, the Defendants are not subject to controlling person liability as a matter of law. Therefore, Count Two of the Complaint must also be dismissed.

IV. CONCLUSION
As Defendants strongly argue, this securities action is a classic example of "fraud by hindsight" which the Reform Act was designed to eliminate. The purpose of the securities laws is full and fair disclosure so that investors can make informed decisions about purchasing publicly-traded securities. The laws are not designed to insulate investors who knowingly assume a financial risk and then, when that risk comes to bear, seek to use the law as an insurance policy.
Plaintiffs invite the Court to heap inference upon inference to support their constrained theory of fraud and ignore the multiple warnings Sunstar made to its investors concerning its declining financial condition. However, the Court is only required to accept those inferences raised from the factual allegations that are both reasonable and strong. The inferences spun by Plaintiffs are neither.
*1322 Plaintiffs have now had two opportunities to amend their Complaint to set forth a claim for securities fraud against these Defendants. Although a trial court must ordinarily grant a plaintiff leave to amend where it appears that a more carefully drafted complaint might state a claim for relief, the Court finds that allowing Plaintiffs to file a Third Amended Complaint in this action would be futile. See Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1213 (11th Cir.2001). Accordingly, Plaintiffs shall not be permitted to replead their claims.
The allegations of the Second Amended Complaint, while voluminous and repetitive, do not pass muster under the strict pleading standards of the Reform Act. It is therefore
ORDERED and ADJUDGED that Defendants' Motions to Dismiss (Doc. Nos. 86, 88, and 90) are GRANTED, and the Second Amended Complaint is hereby DISMISSED WITH PREJUDICE.