Earl FUECHTMAN, individually and
on behalf of all others similarly
situated, Plaintiff,

v.

MASTEC, INC., Austin Shanfelter, and
Donald Weinstein, Defendants.

No. 04–20886 CIV.

United States District Court,
S.D. Florida,
Miami Division.

Sept. 23, 2005.

Steven B. Singer, Eric T. Kanefsky, Bernstein Litowitz Berger & Grossmann LLP, New York, NY for Lead Plaintiff Arkansas Teacher Retirement System and Co-Lead Counsel for the Class.

Kenneth J. Vianale, Vianale & Vianale LLP, Boca Raton, FL, for Liaison Counsel for the Class.

Kevin Yourman, Behram V. Parekh, Yourman Alexander & Parekh LLP, Manhattan Beach, CA, for Lead Plaintiff Alex Meruelo Living Trust and Co-Lead Counsel for the Class.

Tracy A. Nichols, Michael E. Garcia, Holland & Knight LLP, Miami, FL, Attorney for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendants' Second Amended Complaint (**D.E. No. 79**), filed on **March 28, 2005.**

THE COURT has considered the motion, the response, the reply, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is **ADJUDGED** that the motion is **DENIED.**

### I. Background

On February 22, 2005, Plaintiffs filed their Second Amended Complaint against MasTec, Inc., CEO Austin Shanfelter, and CFO Donald Weinstein, alleging accounting fraud perpetrated against MasTec investors. Plaintiffs allege two main fraudulent schemes: (1) Defendants intentionally recognized millions of dollars worth of revenue from change orders they knew would never be paid, and (2) Defendants fabricated customers and invoices in order to increase revenues at MasTec's Canadian subsidiary PhaseCom.

Defendants move to dismiss these claims under Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, Defendants argue that for both schemes, plaintiffs have failed to allege scienter, one of the legal elements required to prove securities fraud.

### II. Legal Standard

In securities fraud cases, the Private Securities Litigation Reform Act (PSLRA) requires plaintiffs to "plead fraud with particularity and allege facts [that] give rise to a strong inference of scienter." *See Phillips v. Scientific–Atlanta, Inc.*, 374 F.3d 1015, 1016–17 (11th Cir.2004). To adequately plead scienter, "the complaint shall, with respect to each act or omission ... state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). For fraud, the required state of mind is that the defendant "made the misrepresentations or omissions ... knowingly or in a severely reckless manner." *In re Sunstar Sec. Healthcare Litig.*, 173 F.Supp.2d 1315, 1318–19 (M.D.Fla.2001). Severe recklessness is established when there are "highly unreasonable omissions or misrepresentations that involve [such] an extreme departure from the standards of ordinary care ... that the defendant must have been aware of [the fraud]." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

In determining whether a plaintiff has sufficiently pled scienter, the Court may consider the factual allegations in a plaintiff's complaint in the aggregate and infer scienter from the aggregation. *See Phillips*, 374 F.3d at 1017. Furthermore, at the 12(b)(6) motion to dismiss stage, the Court must construe a plaintiff's complaint in the light most favorable to the plaintiff and all facts and reasonable inferences drawn from the facts alleged must be accepted as true. *See Scheuer v. Rhodes*,

416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *La Grasta v. First Union Sec., Inc.* 358 F.3d 840, 845 (11th Cir.2004).

## III.  Analysis

The Defendants' primary argument in support their motion to dismiss is that the Plaintiffs have failed to allege facts showing scienter in both the PhaseCom and change order allegations.  In making this argument, Defendants break up each allegation on its individual facts to find scienter.  As noted above, however, all Plaintiffs need to show is that scienter can be inferred from the aggregate of the alleged facts, and looking at the aggregate, Plaintiffs meet this pleading burden.

### A.  Overstatement of Revenue at PhaseCom

■  To show that the Defendants made misrepresentations in a knowing or severely reckless manner, Plaintiffs allege that at the direction of MasTec's management, MasTec's Canadian subsidiary PhaseCom fabricated customers and billings to increase company revenues.  Plaintiffs' Complaint sufficiently counters all of the Defendants' arguments.  For example, Defendants argue that merely holding management positions, being aware of prior questionable audits at PhaseCom, and controlling PhaseCom accounting do not impute knowledge of misconduct to the Defendants nor do they show that Defendants had the intent to defraud.

However, when Plaintiffs' Complaint is read in a light most favorable to Plaintiffs, Defendants' knowledge of the fraud can be inferred from the alleged facts.  First, Plaintiffs allege that their witnesses, the former Senior Vice President of MasTec's Canadian operations and the former President of PhaseCom, stated that MasTec's controller, MasTec's outside auditor, and the Mas family's personal accountant conducted audits that raised questions about inappropriate revenue recognition.  Pls. Compl. ¶¶ 38–39.  Thereafter Defendant Weinstein participated in weekly conference calls with PhaseCom and was told by the Senior Vice President of MasTec's Canadian Operations that one customer accused a $100,000 receivable as being "a complete sham." ¶ 43.  Additionally, Plaintiffs allege that after the audits, Defendant Shanfelter ordered PhaseCom financial management to report directly to Weinstein's financial group. ¶ 45.  Therefore, Plaintiff's allege that Defendants were alerted to the misconduct and not just that they were responsible by way of their management or control positions.  Plaintiffs also allege that the "intentional overstatements of revenues" occurred while MasTec headquarters was in charge of PhaseCom's accounts and knew of the accounting problems. ¶¶ 44–45, 47.  The inference then is that Defendants condoned, or at the very least disregarded, the misconduct because they knew about it and did nothing to rectify it. ¶ 47.  This inference is accepted as true at the motion to dismiss stage.

### B.  Change Orders

■  Plaintiffs allege further severely reckless misrepresentations by charging MasTec with inflating revenue and income through unauthorized change orders.  According to Plaintiffs, MasTec would intentionally underbid a project and then once it received the project, MasTec would try to increase its revenue by submitting a change order.  In the case of four projects (Pomona, Rapid City Tie, Coos Bay, and MSE), Plaintiffs allege that MasTec reported the change order amounts as revenue even though it knew that those orders would never be paid.

MasTec argues instead that its revenue recognitions, in regard to the four projects, were mere estimates subject to change.  MasTec states that the revenue recognition was a judgment call and investors knew that the revenue amount was subject to change.  MasTec argues that to meet the requirements of scienter, Plaintiffs

must show that MasTec knew that this revenue recognition was incorrect.

When Plaintiffs' Complaint is construed in a light most favorable to Plaintiffs, it is clear that Plaintiffs have met their pleading burden with regard to the change orders. Plaintiffs' confidential witnesses corroborate Plaintiffs' contention that MasTec knew it would never be paid for the change orders and therefore, any recognition of that revenue would be incorrect.

### 1. Pamona Project

Plaintiff's Complaint alleges that MasTec made a fixed price contract with Cal–Pomona, a state university that could not legally pay any additional costs. ¶ 95. MasTec asked that the value of the contract be increased and Cal–Pomona informed MasTec that this could not be done. ¶¶ 101, 107. Plaintiffs quote a witness in their complaint as follows: "[MasTec was] taking revenue and profit [it] knew wasn't there." ¶ 103. Another witness confirmed that MasTec knew it would not receive the revenue before it reported it. ¶ 107. Later, MasTec did file a formal claim against the university for $4.8 million, but the claim settled for only $400,000.

### 2. Coos Bay Project

Plaintiffs allege that the contract between Coos County and MasTec states that MasTec had to notify Coos County in writing before starting additional work. ¶ 75. MasTec withheld the change orders for months and Coos County never approved them. ¶¶ 76, 80. Change orders were also submitted after litigation began between the two parties. ¶ 78. Coos County refused to pay any of the change orders and Plaintiffs allege that MasTec was aware that the orders would not be paid when it booked the revenue from the orders.

### 3. Rapid City Project

Plaintiffs allege that the contract between ABB and MasTec stated that all change orders must be submitted in writing for approval within seven days of work being performed. ¶ 86. However, MasTec submitted a change order for $2 million after work was completed and the entire $3.5 million contract price was paid. ¶ 90. ABB told MasTec that it would not pay for the order because it was unauthorized. ¶ 91. Again, Plaintiffs allege that MasTec booked the revenue anyway.

### 4. MSE Project

Plaintiffs allege that MasTec's contract with MSE stated that MasTec must submit change orders within thirty days of the event giving rise to the order. ¶¶ 122–24. MasTec submitted a change order for $2.4 million a month past the thirty day window. *Id.* Thereafter, the Vice President of MSE told MasTec that the "request [for payment of the unapproved change orders] was barred" and the order would not be paid. ¶ 124. Plaintiffs allege that MasTec reported the revenue even though it knew it would not be paid.

### C. GAAP Violations

■ Plaintiffs further allege that MasTec violated GAAP, and this violation is evidence of MasTec's scienter. *See In re Raytheon Sec. Litig.*, 157 F.Supp.2d 131, 148 (D.Mass.2001) (stating that "an application of GAAP that strays from the boundaries of reasonableness will provide evidence from which scienter can be inferred). Although a GAAP violation alone cannot establish scienter, *see Ziemba*, 256 F.3d at 1208–09, violating GAAP may provide some evidence that MasTec acted with severe recklessness and departed from the standards of ordinary care."

Both parties agree that the relevant GAAP provision is SOP 81–1. SOP 81–1 states that change orders should be recog-

nized "only if it is probable that the claim will result in additional contract revenue and if the amount can be reliably estimated." To meet this definition, SOP 81–1 requires that (1) the contract or other evidence provides a legal basis for the claim, (2) the additional costs were caused by circumstances that were unforeseen at the contract date, (3) the costs are identifiable and reasonable, and (4) the evidence supporting the claim is objective and verifiable.

Plaintiffs argue that MasTec did not meet any of the SOP 81–1 requirements when it recognized revenue from the change orders. First, Plaintiffs allege that MasTec had no legal basis for the change orders because each was submitted in violation of a contract. Second, Plaintiffs allege that the change order costs could have been foreseen due to MasTec's underbids. Third, Plaintiffs allege that the costs of the orders were unreasonable, at times reaching 75% of the original contract price. Fourth, Plaintiffs allege that MasTec had no evidence to support its change order claims. Additionally, Plaintiffs note that SOP 81–1 ¶ 65 states that if disputed claims are recognized, the "the amounts recorded, if material, should be disclosed in the notes to the financial statements." Plaintiffs allege that MasTec failed to disclose that the change order revenues were not definite.

Defendants argue that they did not violate GAAP and that GAAP allows for judgment calls on how revenue should be recognized. However, this response along with Defendants' argument that the change order revenue reports were mere estimates are better for the summary judgment stage where inferences are not necessarily on the Plaintiffs' side. After all, the Court is not the ultimate fact finder at the motion to dismiss stage. Instead the facts are considered in the light most favorable to the Plaintiff.

### D. Control Person Liability

Plaintiffs allege control person liability against Defendants Shanfelter, Weinstein, and Mas. The Eleventh Circuit's test for a control person requires a showing that the person "had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996). To meet this test, Plaintiffs must allege that Defendants controlled a person or entity that violated section 10(b); and "no showing of intentional wrongdoing is necessary." *Powers v. Graff*, 148 F.3d 1223, 1227 (11th Cir.1998).

Defendants argue that Plaintiffs have not met their pleading burden with regard to Defendant Mas. Although Mas was no longer a MasTec executive at the time of the misconduct, Plaintiffs sufficiently allege that Mas had the power to at least indirectly control corporate policy. For example, Plaintiffs allege that Mas had a 40% stake in the company, he signed the Registration Statement for the proposed secondary offering, and the 2002 Form 10–K stated that the Company was "controlled by" Mas. ¶ 193.

### IV. Conclusion

Based on the foregoing analysis, Plaintiffs' Complaint sufficiently pleads the elements of securities fraud, including scienter, and Defendants' Motion to Dismiss the Second Amended Complaint (**D.E. No. 79**) filed on **March 28, 2005**, is **DENIED**.