## In re HAMILTON BANKCORP, INC. SECURITIES LITIGATION.

### No. 01–0156–CIV.

United States District Court, S.D. Florida, Miami Division.

Jan. 14, 2002.

---

Howard Kelly Coates, Jr., Paul Jeffrey Geller, Jonathan Matthew Stein, Jack Reise, Cauley Geller Bowman & Coates, Boca Raton, FL, Maya Susan Saxena, Kenneth J. Vianale, Milberg Weiss Bershad Hynes & Lerach, Boca Raton, FL, Robert Timothy Vannatta, Milberg Weiss Bershad Hynes & Lerach, Howard Alan Tescher, Kipnis Tescher Lippman & Valinsky, Fort Lauderdale, FL, Brian Barry, Los Angeles, CA, for Plaintiffs.

Pedro Julio Martinez–Fraga, Mark Paul Schnapp, Clement Ryan Reetz, Greenberg Traurig, Miami, FL, J. Reid Bingham, Hamilton Bank, Miami, FL, Howard Kelly Coates, Jr., Jack Reise, Cauley Geller Brown & Coates, Boca Raton, FL, Kenneth J. Vianale, Tara Steinbok Isaacson, Milberg Weiss Bershad Hynes & Lerach, Boca Raton, FL, Rudolph F. Aragon, Paul Joseph Schwiep, Aragon Burlington Weil & Crockett, Miami, FL, Michelle Odorizzi, Alan N. Salpeter, Linda T. Coberly, Mayer Brown Rowe & Maw, Chicago, IL, Jonathon Cohen, Shutts & Bowen, Miami, FL, Terrence Russell, Ruden McClosky Smith Schuster & Russell, Fort Lauderdale, FL, Jay B. Kasner, Scot D. Musoff, Skadden Arps Slate Meagher & Flom, New York City, for Defendants.

## ORDER DENYING MOTIONS TO DISMISS

GOLD, District Judge.

This Cause is before the Court upon the filing of the following motions to dismiss the Consolidated Amended Complaint ("Consolidated Complaint") [D.E. # 22] by the Defendants: (1) Hamilton Bancorp, Inc. ("Hamilton"), Eduardo Masferrer, Maria Ferrer–Diaz, John M.R. Jacobs, and J. Carlos Bernace (collectively, "Hamilton Defendants," and excluding Hamilton, the "Individual Defendants") [D.E. # 59], (ii) Deloitte & Touche LLP ("Deloitte") [D.E. # 53], and (iii) CIBC World Markets Corporation and Raymond James & Associates, Inc. (the "Underwriter Defendants") [D.E. # 58].

In their Consolidated Complaint, consisting of 144 pages and 358 paragraphs, plus exhibits, the various plaintiffs seek to pursue two distinct sets of claims. The first set of claims—Counts I, II, and III—is brought by Plaintiff Herbert Silverman for alleged violations of the Securities Act of 1933 ("Securities Act"). Plaintiff Silverman, individually and on behalf of a class, claims to have purchased Hamilton Trust Preferred Securities ("Hamilton Securities") in the December 1998 Public Offering and was damaged thereby. Count I seeks recovery from Hamilton, Messrs Masferrer and Bernace, CIBC, and Raymond James under Section 11 of the Securities Act. Count II is a claim against the same defendants under Section 12(a)(2); and Count III seeks to hold Messrs. Masferrer and Bernace liable as control persons under Section 15. Each of these

counts is premised upon allegations that the Registration Statement and Prospectus, issued in connection with the December 28, 1998 Offering, misrepresented and omitted material facts in that, among other things, the financial statements incorporated in the Offering, including the Quarterly Reports on Form 10–Q for the quarters ending March 31, 1998, June 30, 1998 and September 30, 1998, were false and misleading in violation of Generally Accepted Accounting Principles ("GAAP"), and that the Registration Statement failed to disclose Hamilton's lack of internal controls and regulatory violations.

The second set of claims—Counts IV and V—is brought by Lead Plaintiffs John Albers, James R. Winn, and Gunilla Lieberman, individually and as class representatives, for alleged violations of the Securities Exchange Act of 1934 ("Exchange Act"). Count IV seeks recovery from the Hamilton Defendants and Deloitte under Section 10(b) of the Exchange Act and Rule 10b–5, and Count V seeks to hold the Individual Defendants liable as control persons under Section 20. Unlike Counts I through III, these counts concern Hamilton's common stock. In Counts IV and V, the Lead Plaintiffs allege that the Hamilton Defendants and Deloitte engaged in a three-year fraudulent and unlawful scheme implemented to artificially inflate and maintain the market price of Hamilton common stock throughout the Class Period (April 21, 1998 through June 8, 2001).

The Court has reviewed the parties' briefs and has heard oral argument on December 29, 2001. After considering the extensive arguments, the Court concludes that all of the Defendants' motions to dismiss should be denied. This conclusion is based on several grounds which are stated below.

■ First the Consolidated Complaint adequately states Securities Act claims against Hamilton, the signatories to the Registration Statement (Masferrer, Ferrer–Diaz, Bernce and Jacobs), and the Underwriter Defendants.[1] The Consolidated Complaint alleges sufficient allegations that the Prospectus was materially false and misleading and omitted material information regarding Hamilton's lack of internal controls and inadequate loan reserves. In any event, materiality is a question of fact that typically is not resolved at this stage of the proceedings. *E.g., In re Unicapital Corp. Sec. Litig.,* 149 F.Supp.2d 1353, 1364 (S.D.Fla.2001) (stating that dismissal at the motion to dismiss stage is appropriate only where the misrepresentations are "so obviously unimportant to an investor that reasonable minds cannot differ.") (citation omitted).

■ The Court further concludes that Plaintiff Silverman has sufficiently pled standing to assert a claim under Section 11 of the Securities Act. The Court concurs that "in order to have standing under Section 11, one must simply be able to trace

---

1. Section 11 of the Securities Act creates a private cause of action where a registration statement either "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k. A § 11 claim may be brought against the issuer, the issuer's directors or partners, and the underwriters of the offering who are named as having prepared or certified the registration statement. 15 U.S.C. § 77k(a).

Section 12(a)(2) of the Securities Act creates a private cause of action against persons who offer or sell a security which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading. 15 U.S.C. § 77(a)(2). Section 12 liability extends to those who transfer title to the security and to those who successfully solicit the purchase. *Ehlert v. Singer,* 245 F.3d 1313, 1316 (11th Cir.2001).

the purchase of his securities to the registration statement that allegedly violated section 11." *See In Re Unicapital Corp. Securities Litigation,* 149 F.Supp.2d 1353, 1369 (S.D.Fla.2001). Likewise, the allegations in the Consolidated Complaint are sufficient that Plaintiff Silverman purchased the Hamilton Securities on December 23, 1998, the date of the offering, and, therefore, has standing to purse a claim under Section 12(a)(2).

■ Several other arguments by the Defendants similarly lack merit. The Underwriter Defendants' contentions that they were entitled to and did rely on the financial statements certified by Hamilton's auditor, Deloitte, is an affirmative defense which cannot be resolved on a motion to dismiss. Likewise, the Defendants' argument that Rule 9(b) is applicable to Plaintiffs' Securities Act Claims is contrary to Plaintiff's allegations that excluded fraud and intent. Allegations of fraudulent conduct and scienter were pled only in Count IV and Section 10(b). In sum, Plaintiff's Securities Act claims sufficiently allege liability without resort to scienter, and do not so "sound in fraud" as to require compliance with Rule 9(b). It is permissible for a plaintiff to allege a Section 11 claim and a Section 10(b) of the Exchange Act claim in the same complaint, even where both claims rely upon similar if not identical facts. *Holmes v. Baker,* 166 F.Supp.2d 1362, 1371 (S.D.Fla.2001).[2]

■ Second, the Consolidated Complaint satisfies the pleading requirements of Federal Rule of Civil Procedure 9(b) and the heightened pleading requirements under the Private Securities Litigation Reform Act of 1995, Pub.L. No 194–67, 109 Stat. 743, codified at 15 U.S.C. § 78u–4(b) (PSLRA), as against the Hamilton Defen-

dants. These requirements have been addressed at length in *Ziemba v. Cascade Intern., Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001) (as to Rule 9(b)); *Cheney v. Cyberguard Corp.,* 2000 WL 1140306, *3–4 (S.D.Fla.2000), and in *Holmes v. Baker,* 166 F.Supp.2d at 1372 (as to Rule 9(b) and the PSLRA).

■ Although the Hamilton Defendants have argued that Plaintiffs have not complied with Rule 9(b) and the PSLRA, the Court, applying the above requirements, respectfully disagrees and concludes that the Plaintiffs have adequately pled a *prima facie* claim of securities fraud against Hamilton and each of the individual defendants named in the 10(b) count by alleging with sufficient particularity various misstatements and omissions of material facts, made with scienter, on which the Plaintiffs have relied that proximately caused their injuries. *Ross v. Bank South, N.A.,* 885 F.2d 723, (11th Cir.1989) (en banc) (setting forth elements of fraud under Rule 10b–5). Plaintiffs have adequately specified each allegedly misleading statement and the specific reason or reasons why the statements were misleading. Furthermore, Plaintiffs have specified, for each claimed misrepresentation, particular facts giving rise to a strong inference that the Hamilton Defendants acted with a severely reckless state of mind, as compared to mere allegations of motive and opportunity to commit fraud, standing alone. *See Ziemba,* 256 F.3d 1194 (finding prima facie claim of accounting fraud where plaintiffs (1) alleged specific violations of GAAP, and (2) alleged that the violations resulted in financial statements that improperly overstated and recognized revenue); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1283–85 (11th Cir.1999) (holding that allegations of motive and opportunity to commit fraud,

---

**2.** Because there is a claim under Sections 11 and 12 of the Securities Act, Plaintiff can

maintain a Section 15 claim under that act.

**1358**

standing alone, are insufficient to establish scienter; requiring instead that a plaintiff must plead with particularity facts which give rise to a strong inference that the defendant acted in a severely reckless fashion).

These allegations included that Hamilton, during the Class Period, reported continued growth in earnings to investors when these statements were materially false and misleading; that Hamilton knew or recklessly disregarded numerous adverse factors affecting its banking business; that the adverse factors included that: (i) Hamilton failed to properly establish a reserve fund for its substantial and troubled Latin American loans in violation of GAAP and GAAS; (ii) Hamilton failed to properly account for uncollectable loans in violation of GAAP and GAAS; (iii) Hamilton avoided the write-off of numerous bad loans and investment assets at a

price above market value and simultaneously, or in close proximity to, purchasing and booking "different" loans or investment assets at a greater price than their market value in violation of GAAP and GAAS; (iv) Hamilton failed to maintain adequate internal controls in nineteen areas as documented by the OCC Consent Order; (v) Hamilton failed to properly review problem loan applications; (vi) the fraud was brought to management's attention; (vii) the magnitude and scope of the accounting fraud and the number of restatements demonstrated scienter; (viii) the fraud was motivated to complete an Initial Public Offering, and that (ix) the fraud was accompanied by insider sales.[3]

■ Third, the Court concludes that the Consolidated Complaint adequately pleads facts demonstrating a strong inference of scienter as to Deloitte. In order to plead fraud with sufficient particularity under

---

**3.** The allegations taken together give rise to a strong inference of Defendants' scienter. Plaintiffs allege that Hamilton entered into numerous transactions during the Class Period (April 21, 1998 to June 8, 2001) designed to permit Hamilton to avoid writing down the value of its uncollectable loans. After the OCC completed its investigation, Hamilton, according to Plaintiffs, was forced to enter into a Consent Order which, among other things, required Hamilton to stop these transactions. ¶ 197. As a result, Hamilton announced that it would have to restate 1998 and 1999 financial results that would result in a decrease in 1998 net income of $14.3 million and an increase in 1999 net income of $14.3 million. ¶ 201. According to Plaintiffs, those results had to be restated again as Hamilton announced on June 8, 2001. When the 1999 results were restated for a second time, Hamilton showed a net income loss of $2.209 million for the year. ¶ 227. According to Plaintiffs, when Hamilton announced on October 3, 2000 that it had reached a settlement with the OCC, it failed to disclose that the agreement included Hamilton's undertaking to refrain from engaging in transactions in which it sold the Bank's loans or investment assets above market value and simultaneously bought other loans or investment assets at greater than market value. ¶ 200. In addition, Plaintiffs' allegations of scienter against the Hamilton Defendants included: the magnitude of the financial restatements, the number of consecutive reporting periods they cover, and the fact that there were two separate restatements [¶ 7]; that Hamilton failed to maintain any allocated transfer risk reserves ("ATTR") for 1998 and 1999, and its later admission, in 1999, that $36 million of Hamilton's exposure in Ecuador became subject to ATRR, resulting in a restatement of the provision for ATRR of $32.7 million [¶¶ 237, 239]; Hamilton's repeated insistence that the reserves taken for its exposure in Ecuador was solely to comply with its banking regulator, the OCC, and did not reflect GAAP accounting-only to later do an about-face and admit that the SEC staff had also communicated to Hamilton the need to record $32.7 million in reserves (ATRR) for 1999 and $8.2 million for the interim periods of 2000 through September 30, 2000 [¶ 237]; Masferrer's insider sales of $1,260,150 [¶ 336], and Masferrer's and Bernace's alleged repeated approval of loans to individuals and companies they know were not credit-worthy solely because they were "well known to the Chairman" [¶¶ 155–188].

Rule 9(b) and PSLRA, Plaintiffs must allege more than mere violations of auditing standards. *Ziemba*, 256 F.3d at 1209. Taking all of their allegations as true, the Plaintiffs have satisfied the pleading requirements of Rule 9(b) and the PSLRA with respect to Deloitte. While Deloitte argues that this Court should follow its decision in *Cheney*, 2000 WL 1140306, Plaintiffs have alleged more than the existence of GAAP and GAAS violations. The Plaintiffs allege not only GAAP and GAAS violations, but that Deloitte knew and recklessly disregarded, or was severely reckless in not knowing, of a number of red flags which would have exposed the purported fraud.[4] In certain circumstances, courts have held that allegations of violations of GAAP and GAAS, coupled with ignoring "red flags," can be sufficient to state a claim of securities fraud. *Ziemba*, 256 F.3d at 1210.

Here, the allegations in the Consolidated Complaint include as well the magnitude of the misstatements which significantly dwarfs that recognized in *Cheney*, the lack of internal controls in nineteen problem areas as recognized by the OCC report of examination and consent order, the number of restatements, the specific GAAP and GAAS violations as later recognized by the OCC after a routine review (as compared to a full audit), the failure to adhere to so-called "mandatory" SEC requirements with regard to Hamilton's non-recognition of a $32.7 million ATRR, and the February 2000 OCC adverse finding on the $32 million of transfer risk reserve. While Deloitte argues that these allegations raise, at most, an inference of negligence or even gross negligence, the Court concludes that the cumulative effect and totality of the allegations support a strong inference that Deloitte's audit amounted to no audit at all or an egregious refusal to see the obvious or investigate the doubtful. In sum, Plaintiffs have alleged highly unreasonable omissions which, if proven, would constitute an extreme departure from standards of ordinary care in a manner that was not significantly undermined by any purported disclosure by Deloitte. *Ziemba*, 256 F.3d at 1211. Finally, Deloitte's argument that Plaintiffs' claims against it are time-barred is not ripe for adjudication at the motion to dismiss stage.

■ Fourth, Plaintiffs have sufficiently alleged control person liability under Section 20. Section 20 of the Exchange Act provides that each person who, directly or indirectly, controls any person that commits a violation of the federal securities law is jointly and severally liable for the acts of the controlled person. 15 U.S.C. § 78t.[5] This Court has recognized that

---

4. Plaintiffs claim that Deloitte, Hamilton's outside auditor since 1992, ignored several important "red flags" and recklessly provided clean audit opinions for 1998 and 1999. Plaintiffs allege that, as of August 2000, Deloitte knew that the OCC was conducting an intensive and wide-ranging investigation of Hamilton, but nevertheless issued a clean audit opinion for Hamilton's 1999 financial statement [¶ 344]; that Deloitte ignored the red flag presented by Hamilton's simultaneous sale and purchase of overpriced loans or securities to avoid a write down on its books-transactions that the OCC readily discovered during the course of its investigation, along with numerous other violations of banking procedure and GAAP [¶ 197, 345], and

that Deloitte ignored the red flag contained in Hamilton's November 2, 2000 press release in which Hamilton claimed that it was only taking additional reserves for exposure in Ecuador to appease its banking regulations, even though GAAP did not require the taking of the reserve [¶¶ 202, 346]. The Plaintiffs allege that after SEC comments, both Hamilton and indirectly Deloitte, its auditor, admitted that GAAP required a restatement of results for 1999 and interim periods in 2000 to properly account for the needed Ecuadorian loan loss reserves (ATRR's). ¶ 237.

5. The term "control" means possession, direct or indirect, of the power to direct or

"allegations that individuals, because of their management and/or director positions, could control a company's general affairs, including the content of public statements and financial statements disseminated by its company, are sufficient to state a cause of action for controlling person liability." *Cheney v. Cyberguard*, 98–6879–CIV–GOLD/Simonton (S.D.Fla. March 21, 2001) (on motion for reconsideration reversing Court's prior order dismissing certain individual defendants under Section 20(a)).

Applying these standards, the Court concludes that the Consolidated Complaint sufficiently alleges control person liability in that Masferrer was at all relevant times the Chairman, President and Chief Executive Officer of Hamilton; Jacobs has been Senior Vice–President of Finance in charge of finance and accounting and reserves for loans since November, 1998; Ferrer–Diaz was the Treasurer, Senior-Vice President and Chief Accounting Officer of Hamilton until December 1, 1998; and Bernace has been an Executive Vice President, senior lending officer and a member of the Board of Directors since 1997. ¶¶ 27–30. It further sufficiently alleges that Defendants Masferrer, Ferrer-Diaz, Jacobs, and Bernace possessed the power and authority to control the contents of the financial statements, press releases, and presentations to securities analysts and thereby the investing public. ¶ 325.

**WHEREFORE, it is ORDERED:**

1. The motions to dismiss filed by the Defendants [D.E. # s 53, 58, and 59] are **DENIED,** and the Defendants shall file their answers to the Consolidated Complaint within twenty (20) days from the date of this Order.

2. Discovery may proceed in accordance with the Court's *sua sponte* order which shall accompany this Order.

cause the direction of management and policies of a person, whether through the owner-

ship of voting securities, by contract or otherwise. 17 C.F.R. § 240.12b–2.