**In re PSS WORLD MEDICAL, INC.
SECURITIES LITIGATION**

**This Document Relates To: All Actions**

**No. 301CV795J16TEM.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Aug. 1, 2002.

Kenneth Vianale, Milberg, Weiss, Bershad, Hynes & Lerach, Boca Raton, Jack G. Fruchter, Fruchter & Twersky, New York, NY, for Robert J. Bordeaux, plaintiff.

Michael Robert Cavendish, McGuire-Woods LLP, David M. Wells, McGuire-Woods LLP, Jacksonville, Stephen W. Greiner, Jeanne M. Luboja, David M. Stark, Laila Abou–Rahme, Willkie Farr & Gallagher, New York, NY, for PSS World Medical Inc., David A. Smith, Patrick C. Kelly, Frederick E. Dell, defendants.

### *ORDER*

MOORE, District Judge.

Before the Court is Defendants' Motion to Dismiss Amended Class Action Complaint and Incorporated Memorandum of Law (Dkt.36). Plaintiffs filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss Class Action Complaint (Dkt.40). The Court heard oral arguments from the parties concerning the Defendants' Motion on July 12, 2002 (Dkt.44).

## I. Background and Procedural History

The Plaintiffs originally filed a Class Action Complaint in this case on July 13, 2001 (Dkt.1), and they filed an Amended Class Action Complaint on March 22, 2002 (Dkt.29). In their Amended Complaint, the Plaintiffs purport to bring a class action on behalf of all persons and entities who purchased stock from PSS World Medical, Inc. ("PSSI") between October 26, 1999 and October 3, 2000, which the parties term the "Class Period" (Dkt.29, ¶ 1). The Defendants in this case are PSSI, a marketer and distributor of medical products, and certain of its executive officers and directors in their individual capacities (the "Individual Defendants").[1] This Court entered a consolidation Order on January 14, 2002, consolidating the above-captioned case with nine other cases and appointing lead counsel (Dkt.22). However, the Court has never certified a class in this action.

In essence, the Plaintiffs allege that the Defendants' misrepresentations during the Class Period caused PSSI's stock to be artificially inflated (Dkt.29, ¶ 3). Ultimately, several high-ranking officers left PSSI after the company announced that its earnings for the quarter ended September 30, 2000 would in fact be below analysts' expectations. *Id.* at ¶ 2. The Plaintiffs allege that the Defendants utilized several misleading and fraudulent measures in an effort to make the company's earnings look more attractive in the short term, including the following:

1) Keeping quarters open for a period of time after the quarter had ended in order to report shipments of goods that actually occurred in the following quarter;

2) Improperly recognizing revenue on transactions where products were either not shipped or the company continued to have substantial obligations with regard to the products;

3) Failing to properly reserve for uncollectible accounts receivable;

4) Improperly collecting and accounting for rebates from vendors; and

5) Improperly failing to record employee bonuses.

*Id.* at ¶ 4. The Plaintiffs further allege that these measures constitute violations of generally accepted accounting principles ("GAAP"), had the effect of inflating the value of PSSI's stock through misrepresentation, and that the Individual Defendants were in positions to and did in fact control such practices.

Additionally, the Plaintiffs allege that the Defendants were motivated to make misrepresentations regarding PSSI's earnings by the company's proposed merger with Fisher Scientific International, Inc. ("Fisher"). However, due to the income overstatements in violation of GAAP, the Plaintiffs claim Fisher terminated the merger agreement. *Id.* at ¶ 14. Then, following the company's restatement of earnings on September 30, 2000, the Plaintiffs allege that PSSI's stock value drastically declined. *Id.*

More specifically, the Plaintiffs provide allegations of the exact statements they contend were false and misleading at pages 10–25 of the Amended Complaint. These allegedly false and misleading statements, and the Defendants' allegedly

---

1. The Individual Defendants are Patrick C. Kelly, founder and longtime Chief Executive Officer of PSSI, Frederick E. Dell, former Chief Executive Officer of PSSI, and David A. Smith, former Executive Vice President and Chief Financial Officer of PSSI and the company's current Chief Executive Officer. All three Individual Defendants owned significant shares of PSSI stock during the Class Period, but it is not alleged that they sold any of their shares during the Class Period.

fraudulent course of conduct, can be briefly summarized as follows:

1. An October 26, 1999 press release announcing that PSSI was reporting "record results" in the form of revenue and profit increases, as well as a Form 10–Q filed with the SEC for the quarter ending September 30, 1999 which were false and misleading in that they improperly recognized revenue not earned during the quarter and materially overstated revenue and income for the quarter, in violation of GAAP.

2. A January 24, 2000 press release announcing the company's results for the quarter ending December 31, 1999 and a Form 10–Q filed with the SEC on February 14, 2000 reporting the same results, both of which were false and misleading in that they improperly recognized revenue on transactions, overstated PSSI's income, failed to provide for uncollectible receivables, recognized contingent income, otherwise violated GAAP, and failed to acknowledge that the company's worse than expected results were caused by a deterioration of business.

3. A June 22, 2000 press release announcing fiscal 2000 year-end results showing an increase in net sales and income as well as the definitive merger with Fisher and a Form 10–K filed with the SEC on June 23, 2000 reporting the same results. These statements were materially false and misleading in that they again inflated the company's revenue, improperly failed to account for uncollectible receivables from customers in dire financial condition, improperly recognized contingent income, and understated PSSI's net loss for fiscal year 2000. Additionally, the press release was false and misleading because it concealed the fact that the merger with Fisher was based on the above fraudulent income reports for fiscal 2000. Due to the non-disclosure of material facts, Plaintiffs allege that the investment community falsely relied on PSSI's ability to merge with Fisher, thus further inflating the value of PSSI's stock.

4. An August 8, 2000 press release reporting financial results for the quarter ending June 30, 2000 announcing that sales had increased and the financial requirements of the merger agreement with Fisher had been met, causing Fisher to issue a similar press release, and an August 10, 2000 Form 10–Q in which PSSI reported the same financial results. The Plaintiffs claim these documents were false and misleading because the true financial results of PSSI that were required as part of the merger agreement were not reflected, operating and net income were inflated based on PSSI's subsequent restatement of March 31, 2001, revenue was again contingent and improperly recognized, income was overstated, extensive uncollectible receivables were not accurately reported, and accruals of bonuses were not reported, all in violation of GAAP. Ultimately, Plaintiffs allege that these financial results were ultimately restated to reduce sales, income and accounts receivable. As a result of Fisher's investigation of PSSI's books, Plaintiffs allege that the merger agreement was terminated in September 2000 and PSSI's stock value subsequently drastically declined.

*Id.* at ¶¶ 26–49. The Plaintiffs then go on to allege that at the end of the class period, officers of PSSI resigned and the company's earnings were subsequently re-

stated, substantially reducing the company's net income and causing the stock value to drastically decline. *Id.* at ¶¶ 50–54.

The Plaintiffs claim that as in this case, statements filed with the SEC that are not in compliance with the GAAP are presumed to be inaccurate and misleading. *Id.* at ¶ 55. As such, because the Defendants knowingly violated GAAP on several occasions in their filings with the SEC and in press releases, necessitating a later restatement, the Plaintiffs allege the Defendants are liable for such fraudulent misrepresentations. The Plaintiffs detail the Defendants' alleged violations of accounting principles, which they claim had the effect of misleading the investing public, at paragraphs 60 and 61 of their Amended Complaint. They further allege that through their accounting violations, the Defendants violated a number of SEC rules throughout the class period, and accordingly should be liable for such violations. *Id.* at ¶ 63.

At pages 33 through 37 of their Amended Complaint, the Plaintiffs make their scienter allegations against the Defendants. The Plaintiffs claim that the Individual Defendants controlled and possessed the power to control the contents of PSSI's financial statements and press releases, and that they either knew of or recklessly disregarded "the adverse, non-public information about PSSI's business and operations as well as its finances, markets and present and future business prospects." *Id.* at ¶¶ 64–65. The Plaintiffs further allege that the individual Defendants had a duty to accurately report and disseminate financial information about the company, and to accurately recognize and report revenues in accordance with GAAP. *Id.* at 66. The Defendants' misrepresentations and omissions during the Class Period allegedly violated these duties. *Id.*

The Plaintiffs then provide more detail concerning these allegations with regard to each individual Defendant, claiming that each was involved in drafting and disseminating both press releases and SEC filings during the reporting periods detailed above, and as such each was aware of or recklessly disregarded the inaccurate financial information, misrepresentations, and violations of GAAP. *See id.* at ¶¶ 67–69. Additionally, the Plaintiffs claim that the Individual Defendants engaged in a "scheme, common enterprise or common course of conduct to artificially inflate and/or maintain the price of PSSI's stock" when they issued statements that "portrayed a false picture of the Company's business and operations and misrepresented and/or failed to disclose material, adverse facts concerning PSSI's business, revenues, earnings, management and financial condition." *Id.* at ¶ 70.

Plaintiffs conclude that the Defendants were motivated by their desire to favorably portray PSSI's financial status so that the company would be acquired by another company, and to cause PSSI's stock value to become artificially inflated so that investors such as the Plaintiffs would purchase stock during the Class Period, and so that Fisher would merge with the company. *Id.* at ¶ 71. As a result of the Defendants' actions, the Plaintiffs claim there is a presumption of reliance and injury under the "fraud on the market" doctrine. *Id.* at ¶¶ 80–81. Lastly, because the statements at issue were "hard," current financial statements that the Defendants allegedly knew were false, the Plaintiffs argue that there is no protection for the Defendants under the safe harbor for "forward looking" statements. *Id.* at ¶ 82.

Defendants collectively filed their Motion to Dismiss Amended Class Action Complaint and Incorporated Memorandum of Law on May 14, 2002 (Dkt.36). In a nutshell, the Defendants claim that this case "amounts to a restatement in search

of a fraud." *Id.* at 1. The Defendants argue that while the Plaintiffs have alleged various violations of GAAP in making the June 2001 restatement of earnings, they have not adequately pled scienter on the part of Defendants and have failed to allege an adequate basis for their "information and belief" allegations in that they have failed to name the sources for their allegations in the Amended Complaint. *Id.* at 2–3. Furthermore, the Defendants argue that the Plaintiffs have failed to properly plead that their injury was proximately caused by the Defendants' conduct and that they have failed to plead sufficient facts to demonstrate control person liability under Section 20(a) of the Securities and Exchange Act. *Id.* at 3.

The Defendants argue that while the Amended Complaint alleges violations of GAAP at length, it does not link the alleged accounting problems occurring during the quarters ending September 30, 1999, December 31, 1999, March 31, 2000 and June 30, 2000 to any injury allegedly suffered by the class. *Id.* at 5. The Defendants claim that the Plaintiffs' allegations concerning the termination of the Fisher merger, the announcement of resignations of officers and the company's restatement of earnings may provide causation for the alleged injuries, but these events have nothing to do with the GAAP violations that are "central to the Complaint." *Id.* at 5–6. The Defendants claim that Plaintiffs' theory that Fisher terminated the merger with PSSI due to its inaccurate and fraudulent financial reporting is implausible because Fisher itself reviewed PSSI's books and concluded that the requirements of the merger had been met by the company. *Id.* at 6. As such, unless Fisher itself committed fraud in issuing a press release confirming that PSSI had met its financial requirements, an allegation the Defendants claim has not been alleged and cannot be supported, Defendants contend that the Plaintiffs have not put forth a theory

whereby GAAP violations during the Class Period actually caused them any injury. *Id.* at 6–7.

## II. Standards of Review

To prevail on a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, the Defendants must show beyond all doubt that the Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Luckey v. Harris,* 860 F.2d 1012, 1016 (11th Cir.1988). In other words, courts disfavor motions to dismiss and only grant such motions in rare circumstances. *See Gasper v. La. Stadium and Exposition Dist.,* 577 F.2d 897, 900 (5th Cir.1978).

At the motion to dismiss stage, this Court is required to accept all of the Plaintiff's well-pleaded facts as true, and all reasonable inferences are to be construed in the light most favorable to the Plaintiff. *See, e.g., Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1274, n. 1 (11th Cir.1999); *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir.1998). The Court is not required, however, to accept unsupported legal conclusions as true for purposes of a motion to dismiss. *See Gomer v. Philip Morris Inc.,* 106 F.Supp.2d 1262, 1268 (M.D.Ala.2000). The Court can also consider any documents referred to in the Plaintiffs' Amended Complaint that are central to their claims. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997). Additionally, in a securities fraud case, the Court can take judicial notice of and review public documents required to be filed and actually filed with the Securities and Exchange Commission (SEC).

*See In re Sunterra Corp. Securities Litigation,* 2002 WL 480620 (M.D.Fla.2002).

 In this case, the Plaintiffs allege violations of Section 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b), as well as Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. To allege securities fraud under Rule 10b–5, the Plaintiffs must show: 1) a misstatement or omission; 2) of material fact; 3) made with scienter; 4) on which the Plaintiffs relied; 5) that proximately caused the Plaintiffs' injury. *See id.; Bryant,* 187 F.3d at 1281. To prove the causation element, the Plaintiffs must show both that the misrepresentations or omissions caused them to engage in the transaction in question, and that the fraud was in some proximate way responsible for their loss. *See Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1447 (11th Cir.1997) (citations omitted).

 In addition, the Plaintiffs' claims against the Individual Defendants arise under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). This section provides for joint and several liability of any persons who had the "power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws ... [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability." *In re Sunterra,* 2002 WL 480620, *6 (quoting *Brown v. Enstar Group, Inc.,* 84 F.3d 393, 396 (11th Cir.1996)). The Plaintiffs cannot adequately plead violations of Section 20(a) without adequately pleading the primary violations. *See Brown,* 84 F.3d at 396–97.

Both the Federal Rules of Civil Procedure and federal statutes provide for specific, heightened rules of pleading in complaints alleging securities fraud. Federal Rule of Civil Procedure 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," but "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The Eleventh Circuit has stated that Rule 9(b)'s fraud particularity requirement is met as long as the complaint sets forth " '(1) precisely what documents or oral representations were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.' " *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks,* 116 F.3d at 1371).

 Additionally, the Private Securities Litigation Reform Act of 1995 (PSLRA) imposes further heightened pleading burdens on the Plaintiffs in this case. The PSLRA requires that in fraud cases such as this one, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Under the PSLRA, the Plaintiffs must meet these requirements and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," otherwise the Court is required to grant the Defendants' Motion. *See* 15 U.S.C. § 78u–4(b)(2)–(b)(3)(A). This means that the Plaintiffs must provide enough facts to form an "adequate basis for believing that the defendants' statements were false," but the Plaintiffs do not need to specifically name their sources as long as they describe them in their Amended Complaint "with sufficient particularity to support the probability

that a person in the position occupied by the source would possess the information alleged," or they provide other sources or information to demonstrate the falsity of the statements. *In re Theragenics Corp. Securities Litigation,* 105 F.Supp.2d 1342, 1355 (N.D.Ga.2000) (quoting *Novak v. Kasaks,* 216 F.3d 300, 313 (2nd Cir.2000)). Mere "conclusory allegations or unwarranted deductions of fact," however, will not be sufficient for the Plaintiffs to avoid dismissal in this case. *See, e.g., Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

▮ The Eleventh Circuit has reasoned that the PSLRA requires factual specificity and particularity regarding the required state of mind. Although this required state of mind has been defined as scienter, the Eleventh Circuit has held that liability under Rule 10b-5 can be implicated through specific allegations that give rise to a "strong inference" that the defendant had "an intent to deceive, manipulate or defraud," *or* that the defendant "acted with a severely reckless state of mind." *See Bryant,* 187 F.3d at 1282–83; *see also Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). A showing of "severe recklessness" is not satisfied through a showing of simple or gross negligence, but instead the Plaintiffs must show "an extreme departure from the standards of ordinary care ... that present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware of it." *Bryant,* 187 F.3d at 1282, n. 18 (citations omitted). Allegations of mere motive and opportunity on the part of the Defendants will not be sufficient for the Plaintiffs to establish the required level of scienter, although they are relevant to a determination of the required state of mind. *See id.* at 1285–86. The Plaintiffs can meet their burden under the PSLRA if they plead facts constituting "strong circumstantial

evidence of conscious misconduct or severe recklessness." *In re JDN Realty Corp. Securities Litigation,* 182 F.Supp.2d 1230, 1239 (N.D.Ga.2002).

▮ Lastly, the PSLRA provides a safe harbor for so-called "forward looking statements," absolving defendants from liability if their statements are accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u–5(c)(1)(A)(i). Moreover, even if the forward-looking statement has no accompanying cautionary language, the Plaintiffs must nonetheless prove that the Defendants made the statements at issue with "actual knowledge" that they were "false or misleading." 15 U.S.C. 78u–5(c)(1)(B); *Harris v. Ivax Corp.,* 182 F.3d 799, 803 (11th Cir.1999).

### III. Legal Analysis

#### A. *The Defendants' Motion to Dismiss*

In their Motion to Dismiss, the Defendants argue that "[i]n an effort to mask the infirmities of their Section 10(b) claim, Plaintiffs follow the dual strategy of citing to purported anonymous sources and then presenting through their supposed statements (as well as other unattributed allegations), vague and conclusory descriptions of GAAP misapplications unconnected to facts substantiating intentional wrongdoing." (Dkt.36, p. 10). Reliance on anonymous sources and "vague statements about accounting errors," the Defendants contend, is inconsistent with the goals of the PSLRA. *Id.* At best, the Defendants contend that some of the Plaintiffs' allegations may rise to the level of poor business judgments or even mismanagement, but none of the allegations rise to the level of fraud. Accordingly, the Defendants argue that the Plaintiffs have not met the pleading standards ar-

ticulated in Rule 9(b) and the PSLRA, necessitating the dismissal of their Amended Complaint.

First, the Defendants contend that simple allegations of violations of GAAP do not further the Plaintiffs' scienter allegations. The Defendants argue that the Plaintiffs have failed to show there was a "wide departure" from accounting principles that is sufficient to establish the requisite intent or recklessness on the part of the Defendants, and that had a "specific and material impact on the Company's financial statements." *Id.* at 12–13; *Malin v. Ivax Corp.,* 17 F.Supp.2d 1345, 1361 (S.D.Fla.1998); *In re Sunstar Sec. Healthcare Litigation,* 173 F.Supp.2d 1315, 1319–20 (M.D.Fla.2001). Similarly, the Defendants claim that the Plaintiffs' allegations concerning bonus accruals, recorded rebates and allowance for doubtful or potentially uncollectible accounts are not sufficient to demonstrate fraud or materiality, as they instead amount to nothing more than "second guessing" on the part of the Plaintiffs. (Dkt.26, pp. 14–17); *Coates v. Heartland Wireless Communications, Inc.,* 100 F.Supp.2d 417, 428–29 (N.D.Tex. 2000). As such, Defendants argue that the Plaintiffs have failed to plead the factual basis to establish the requisite level of scienter based on these immaterial or "fraud in hindsight" allegations. *See also Holmes v. Baker,* 166 F.Supp.2d 1362, 1380 (S.D.Fla.2001).

The Defendants also argue in their Motion that the statements on which the Plaintiffs base their Amended Complaint, highlighted above, are either optimistic "puffing" for which there can be no liability, or "forward looking" statements that shield the Defendants from liability under the PSLRA unless the Plaintiffs plead the requisite level of scienter. (Dkt.36, pp. 17–19). In particular, the Defendants contend that the press releases issued by PSSI on October 26, 1999, January 24, 2000 and June 22, 2000 are simply statements of future economic objectives and beliefs, and as such the Plaintiffs must allege actual knowledge of falsity on the part of the Defendants in order to establish liability for these forward looking statements. *Id.; Theoharous v. Fong,* 256 F.3d 1219, 1225 (11th Cir.2001); *Harris,* 182 F.3d at 803. Moreover, the Defendants contend that the statements contain cautionary language that protects them from liability under the safe harbor provisions of the PSLRA, particularly given the fact that the statements purport to admit the financial struggles of PSSI customers. *See Harris,* 182 F.3d at 803. As the Plaintiffs have not met their burden in establishing liability based on these forward looking statements containing cautionary language, the Defendants argue that the Amended Complaint should be dismissed.

With regard to the Individual Defendants, the Defendants contend that the Plaintiffs' "conclusory allegations" of scienter based on their positions within the company or their involvement in day-to-day activities of PSSI, such as the mere singing of financial statements, are insufficient to demonstrate scienter against *each* individual Defendant. (Dkt.36, pp. 20–21); *In re Sunterra,* 2002 WL at 480620; *Cheney v. Cyberguard Corp.,* 2000 WL 1140306 (S.D.Fla.2000). Additionally, Defendants claim that the Plaintiffs' mere allegations of "motive and opportunity" against the Individual Defendants, without any allegations that the Defendants benefitted from any purported artificial inflation of the company's stock price, cannot establish the requisite level of scienter against the Defendants. (Dkt.36, pp. 21–23); *Bryant,* 187 F.3d at 1285–86 (11th Cir.1999); *In re Sunterra,* 2002 WL 480620 at *4; *Ziemba,* 256 F.3d at 1202.

Importantly, the Defendants argue that the Plaintiffs' entire Amended Complaint

is based on "information and belief," and since they have not stated with particularity all facts upon which the belief is founded, Defendants contend that dismissal is appropriate. (Dkt.26, pp. 23–26); 15 U.S.C. § 78u–4(b)(1)(B); *In re Towne Svcs. Sec. Litig.*, 184 F.Supp.2d 1308, 1317 (N.D.Ga.2001). The Defendants contend that the Plaintiffs' allegations that they have reviewed public announcements, SEC filings, press releases and media reports, and have interviewed "others in the industry" in making their claims does not form a sufficient factual basis for the Amended Complaint under the Federal Rules and the PSLRA. (Dkt.36, pp. 24–26). Additionally, Defendants argue that the Plaintiffs' Amended Complaint should be dismissed because the Plaintiffs have not met their obligation to specifically name the sources on which they base their allegations, nor have they shown how the information provided by these anonymous sources concerns material monetary amounts. *See id.; In re Tech. Chem. Sec. Litig.*, 2001 WL 543769, *6 (S.D.Fla.2001); *In re Republic Svcs. Sec. Litig.*, 134 F.Supp.2d 1355, 1362 (S.D.Fla.2001).

Defendants further allege that the Plaintiffs have not adequately pled loss causation in their Amended Complaint. According to the Defendants, the Plaintiffs have only alleged that the termination of the proposed Fisher merger, along with the firing of company officers and the subsequent restatement of earnings, caused the stock price to "collapse." (Dkt.36, pp. 27–29). The Defendants argue that the primary basis for the Plaintiffs' Amended Complaint—the alleged violations of GAAP detailed above—is not connected to the drop in PSSI's stock prices that caused the Plaintiffs' alleged injury. *See id.* As such, the Defendants contend the Amended Complaint should be dismissed because the Plaintiffs have not properly connected the Defendants' alleged wrongdoings with any injury. *See id.; Robbins*, 116 F.3d at

1447; *In re Towne Svcs.*, 184 F.Supp.2d at 1326.

Lastly, because for the above reasons the Plaintiffs have failed to properly allege a violation of Section 10(b) of the Securities and Exchange Act, the Defendants contend that the Plaintiffs cannot maintain an action against the Individual Defendants under Section 20(a) of the Act. *Id.* at 29–30; *Theoharous*, 256 F.3d at 1227; *In re Sunterra*, 2002 WL 480620 at *26; *Holmes*, 166 F.Supp.2d at 1382. Because the Plaintiffs have failed to describe any wrongful acts with the required level of specificity, particularly with respect to Defendant Dell, the Defendants urge this Court to dismiss the claims against the Individual Defendants. *See also In re Towne Svcs.*, 184 F.Supp.2d at 1328; *In re JDN Realty Corp.*, 182 F.Supp.2d at 1249.

### B. *The Plaintiffs' Response*

The Plaintiffs counter the Defendant's Motion by arguing that the Amended Complaint specifically sets forth material financial amounts that were overstated or misrepresented by the Defendants, and that the Defendants' violations of GAAP fraudulently inflated the value of the company's stock that later collapsed, causing the Plaintiffs injury. (Dkt. 40, pp. 3–6; Dkt. 29, Ex. A). The Plaintiffs claim that the fraudulent statements made by the Defendants regarding each financial quarter involved, detailed above, more than adequately allege GAAP violations that involved material amounts, causing an inflation of PSSI's stock price that would constitute securities fraud. (Dkt.40, pp. 3–6).

Moreover, the Plaintiffs strenuously argue that the Amended Complaint adequately pleads scienter to withstand the Motion to Dismiss. In essence, the Plaintiffs claim that their allegations that the Defendants had the motive to inflate PSSI's stock price to entice a potential buyer for the company, and that the com-

pany "cooked its books" in order to achieve the necessary reporting results, which ultimately led to the termination of the merger with Fisher and the firing of key officers, are more than sufficient allegations of scienter. *Id.* at 7–8. Furthermore, the Plaintiffs state that they have sufficiently alleged that such improprieties, which artificially inflated PSSI's stock price and ultimately led to the Plaintiffs' injuries, occurred under the direction and participation of the Individual Defendants. *Id.* at 8–11.

The Plaintiffs allege that the Individual Defendants, as controlling officers of PSSI, were involved in drafting, producing, reviewing and disseminating the false and misleading statements highlighted above, as well as directing PSSI personnel to engage in GAAP violations and other improprieties. *Id.* In addition, the Plaintiffs contend that the "group pleading doctrine" applies to cover the allegations against all Individual Defendants based on the collective actions of PSSI's officers in the day-to-day management and control of the company. *Id.* at 16–17; *In re Checkers Sec. Litig.*, 858 F.Supp. 1168, 1178 (M.D.Fla.1994); *In re Sunbeam Sec. Litig.*, 89 F.Supp.2d 1326, 1341 (S.D.Fla. 1999). Accordingly, the Plaintiffs contend that these allegations are sufficient to satisfy the intent or "severe recklessness" scienter pleading requirements of the Federal Rules and the PSLRA.

Contrary to the Defendants' argument, the Plaintiffs claim that the safe harbor for so-called "forward looking" statements does not apply to the statements which form the basis of the Amended Complaint. In the Plaintiffs' view, the statements at issue reflect current reported financial re-

sults for PSSI, and as such they are not "forward looking." (Dkt.40, pp. 18–19). Because the Plaintiffs are claiming these current financial results were fraudulent and in violation of GAAP, they allege that the Defendants are not protected by any safe harbor, even given the purported inclusion of "boilerplate cautionary language" in the statements. *Id.; In re Sunbeam*, 89 F.Supp.2d at 1341; *In re Donald J. Trump Casino*, 7 F.3d at 371 (3d Cir. 1993).

Plaintiffs also dispute the Defendants' contention that they must name their confidential sources who provided the information that formed the basis of the allegations in the Amended Complaint, arguing that Rule 9(b) and federal courts do not require specific disclosure of such sources. *See, e.g., In re Paradyne Networks, Inc. Sec. Litig.*, 197 F.Supp.2d 1349 (M.D.Fla. 2002); *In re Hamilton Bancorp., Inc. Sec. Litig.*, 194 F.Supp.2d 1353, 1358 (S.D.Fla. 2002); *In re Towne Svcs.*, 184 F.Supp.2d at 1316–18. Although the Eleventh Circuit has not explicitly ruled on this issue, according to the Plaintiffs the seminal case *Novak v. Kasaks*, 216 F.3d 300 (2nd Cir. 2000), adopted by a number of federal courts, explicitly holds that such specific identification of confidential sources is not required by the federal rules or the PSLRA. *See also In re Theragenics Corp.*, 105 F.Supp.2d at 1355; *Holmes*, 166 F.Supp.2d at 1362. As such, the Plaintiffs claim that they have "alleged in detail information about the sources of the facts alleged that is more than sufficient to establish their credibility and reliability," and therefore the Amended Complaint should not be dismissed on this ground. (Dkt.40, p. 21).[2]

---

**2.** The confidential sources in the Plaintiffs' Amended Complaint are described as formerly holding a variety of positions within the company, including several physician sales branch managers, physician sales leaders, operations managers, physician sales repre-

sentatives, controllers, accountants, and customer service representatives. During oral argument, the Plaintiffs' counsel argued that more than twenty people throughout the country were interviewed in preparation for

According to the Plaintiffs, the Amended Complaint is sufficiently particularized to satisfy the requirements of Rule 9(b) and the PSLRA, particularly since the Plaintiffs have both described the sources of their information, as well as the time, date, place, manner and the publication in which the statements described above were made, along with the specific PSSI customers involved. *Id.* at 22–23. Although the Defendants claim that the Plaintiffs are required to specify the dollar amount involved in the Defendants' allegedly fraudulent transactions, the Plaintiffs claim they have provided enough descriptive corroboration to satisfy their pleading requirements. *See Holmes,* 166 F.Supp.2d at 1374.

Lastly, for purposes of this Court's ruling on the Defendants' Motion to Dismiss, the Plaintiffs contend that they have adequately pleaded "loss causation" by alleging that as a result of the Defendants' fraudulent statements of inaccurate facts, the market price of PSSI stock was artificially inflated during the Class Period, ultimately causing the Plaintiffs' injury. In other words, the Plaintiffs argue that they have adequately pled a chain of fraudulent events perpetrated by the Defendants which caused them to buy artificially inflated stock that ultimately collapsed due to the Defendants' fraudulent activities. (Dkt.40, pp. 24–30).

In the Plaintiffs' view, the fact that the stock price was fraudulently inflated on the date they purchased the stock establishes loss causation at least for purposes of this Court's ruling on a Rule 12(b)(6) motion, since the truth regarding PSSI's financials would have resulted in a proper valuation of their investment. *Id.; see also Gray v. First Winthrop Corp.,* 82 F.3d 877, 886 (9th Cir.1996); *Adair v. Bristol*

*Technology Systems, Inc.,* 179 F.R.D. 126, 135 (S.D.N.Y.1998). Because the Plaintiffs have connected the artificial inflation of the stock price with their injury, they claim they have established loss causation even if it is ultimately shown that some other factor contributed to their loss. (Dkt.40, pp. 24–30); *see also In re Checkers,* 858 F.Supp. at 1177; *In re MicroStrategy, Inc. Sec. Litig.,* 115 F.Supp.2d 620, 658 (E.D.Va.2000); *In re Paradyne Networks, Inc.,* 197 F.Supp.2d at 1356–57. Since this is a fact-intensive inquiry, the Plaintiffs argue that the issue of loss causation should not be ruled upon by the Court at this stage of the litigation.

In short, the Plaintiffs claim they have properly alleged facts demonstrating an intentional, or at least severely reckless, course of conduct by the Defendants that inflated the value of PSSI's stock, leading ultimately to the termination of the Fisher merger, the firing of top company officers, and the restatement of previously misrepresented earnings. The Plaintiffs claim they will show that the market ultimately realized the company's accounting problems, and the propriety of the Defendants' conduct should at least be an issue that can withstand a motion to dismiss. As a result of the Defendants' improprieties, the Plaintiffs claim they have been financially injured. Moreover, the Plaintiffs state they have alleged that the Individual Defendants had sufficient control and authority over the company's conduct, and effectively exercised that control for fraudulent purposes, such that individual liability has been stated against the Individual Defendants. (Dkt.40, pp. 30–31); *Brown,* 84 F.3d at 397. The Plaintiffs therefore urge this Court to deny the Defendants' Motion to Dismiss the Amended Complaint.

---

drafting the complaint, all of whom claimed the company "cooked the books" and pressured its employees to create financial results

that were better than the actual revenue earned by PSSI.

### C. The Plaintiffs' Amended Complaint Adequately Pleads Securities Fraud

 This Court agrees with the Plaintiffs' arguments above and holds that the Amended Complaint adequately pleads claims against all Defendants for securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act and the rules promulgated thereunder for purposes of the Defendants' Rule 12(b)(6) Motion. Although the Defendants argue that the Plaintiffs have not connected the purported GAAP violations and statements discussed above to any alleged drop in stock price causing injury, the Plaintiffs have actually alleged that the Defendants' course of fraudulent conduct during the Class Period caused PSSI's stock to be artificially inflated, thereby ultimately causing the Plaintiffs' injury.

In essence, the Amended Complaint alleges that the Defendants utilized several fraudulent measures, in violation of GAAP, in an effort to make the company's earnings look more attractive in the short term, and that the Individual Defendants controlled the practices that resulted in the statements highlighted above. Furthermore, the Amended Complaint states that the Defendants were motivated to make misrepresentations regarding the company's earnings in order to entice a company such as Fisher to merge with PSSI. In the end, however, the Plaintiffs claim that Fisher discovered the accounting improprieties and terminated the merger agreement. Following the termination of the merger, the company terminated Defendant Kelley and subsequently issued a restatement of earnings. As a result of this knowingly fraudulent course of conduct by the Defendants, in violation of GAAP and SEC rules, the Plaintiffs allege that PSSI's stock value drastically declined, causing them financial injury.

The Plaintiffs' scienter allegations specifically state that the Individual Defendants either knew of or recklessly disregarded the actual finances, markets and present and future business prospects for PSSI, each preferring instead to engage in misrepresentations in an effort to artificially inflate the stock price. As a whole, the Plaintiffs allege that the Defendants participated in a scheme or common enterprise to artificially inflate PSSI's stock by disclosing false facts or failing to disclose material facts concerning the company's actual financial outlook. According to the Plaintiffs, this fraudulent course of conduct had the effect of not only enticing Fisher to attempt a merger with PSSI, but it also caused the Plaintiffs to purchase stock that ultimately collapsed, causing them injury.

Taking these allegations by the Plaintiffs as true for purposes of the Defendant's Motion, the Court finds that the Amended Complaint satisfies the pleading standards established by Rule 9(b), Federal Rules of Civil Procedure, and the PSLRA. The Amended Complaint sets forth the precise statements that were made, when they were made and who made them, how the statements allegedly inflated the market price of the stock, thereby misleading investors such as the Plaintiffs, and what the Defendants were allegedly trying to gain through the fraudulent inflation of the stock price. As such, the averments in the Amended Complaint sufficiently meet the "fraud with particularity" requirements of Rule 9(b). *See Ziemba,* 256 F.3d at 1202; *Holmes,* 166 F.Supp.2d at 1374.

 Moreover, the Amended Complaint meets the requirements of the PSLRA in that it specifies the allegedly misleading statements and why the Plaintiffs believe they were misleading (i.e., the "cooking of the books" by Defendants), as well as all facts upon which the Plaintiffs

rely to give rise to a strong inference that the Defendants acted with the required state of mind. *See* 15 U.S.C. § 78u–4(b)(2)–(b)(3)(A). Taking the Amended Complaint in the light most favorable to the Plaintiffs, the Court finds that they have provided sufficient averments to show an adequate basis for believing that the Defendants' statements were false or misleading, given their allegations that the Defendant violated GAAP, causing the inflation of the stock price and its eventual collapse.

■ Contrary to the Defendants' arguments, the Court holds that the Plaintiffs do not need to specifically name their confidential sources in support of their averments. Instead, here the Plaintiffs have described numerous former PSSI employees and customers with sufficient particularity to support the probability that these are actual persons possessing the information leading to the specific claims against the Defendants. The Plaintiffs have stated that they have conducted a nationwide investigation and obtained the necessary information from the former employees to form their allegations, along with documentation such as Exhibit A to their Amended Complaint, which shows PSSI's receivables. As such, the Court finds that they have provided sufficient factual allegations to support the falsity of the statements discussed above. *See In re Theragenics Corp.*, 105 F.Supp.2d at 1355. This Court agrees with the reasoning in *Novak*, 216 F.3d at 313, that more specificity in identifying their sources is not required at

this stage of the litigation. *See also In re Theragenics Corp.*, 105 F.Supp.2d at 1355; *Holmes*, 166 F.Supp.2d at 1362.[3]

■ The Plaintiffs have also sufficiently pled scienter to avoid dismissal. They have specifically pled that the Defendants either intended to manipulate or defraud or that they were severely reckless in engaging in improprieties that ultimately led to the Plaintiffs' injuries. *See Bryant*, 187 F.3d at 1282–83; *see also Ernst & Ernst*, 425 U.S. at 185, 96 S.Ct. at 1375, 47 L.Ed.2d at 668. This case presents clearer allegations of wide departures from accounting principles and fraudulent activities on the part of the Defendants than were presented in cases such as *Malin*, 17 F.Supp.2d at 1361, and *In re Sunstar*, 173 F.Supp.2d at 1319–20.

Here, the Plaintiffs have alleged that the Defendants' conduct, including their multiple, systematic violations of GAAP, constituted "an extreme departure from the standards of ordinary care" that misled buyers, and that the Defendant either knew that their conduct would have this effect or it was so obvious that they must have been aware of it. *Bryant*, 187 F.3d at 1282, n. 18 (citations omitted). Unlike the individual defendants discussed in *In re Sunterra Corp.*, 2002 WL at 480620, and *Cheney*, 2000 WL at 1140306, here the Plaintiffs have alleged that each one of the Individual Defendants was fraudulent and severely reckless in controlling and participating in the misleading statements discussed above. Moreover, although not sufficient in and of itself to establish reck-

---

**3.** The Defendants claim that based on the language of its opening paragraph, the entire Amended Class Action Complaint is based on "information and belief" with no factual support by the Plaintiffs, but the Court finds this contention to be without merit. Instead, the opening paragraph specifically states that the Plaintiffs are making their allegations "upon personal knowledge as to their own acts and upon the investigation conducted by their

counsel, which included, among other things, a review of the public announcements made by the defendants, Securities and Exchange Commission ('SEC') filings, press releases, media reports, discussions with consultants and others in the industry regarding PSS World Medical, Inc. . . . and interviews of former employees of the Company . . ." (Dkt.29, p. 1).

lessness, the Plaintiffs have also alleged a specific motive on the part of the Defendants to engage in such improprieties. *See Bryant,* 187 F.3d at 1285–86; *see also In re JDN Realty Corp.,* 182 F.Supp.2d at 1239. Such allegations are sufficient to establish the necessary scienter under Rule 9(b) and the PSLRA for purposes of the Defendants' Motion.

■ Again analyzing the Amended Complaint in the light most favorable to the Plaintiffs, this Court further finds that the Plaintiffs' allegations sufficiently demonstrate that the statements at issue are not "forward looking" and do not contain sufficient cautionary language that would cloak the Defendants with special protection at this stage of the case. *Compare In re Donald J. Trump Casino,* 7 F.3d at 371. Instead, for purposes of the Defendants' Motion, the Court agrees with the Plaintiffs that the statements alleged to be fraudulent concern primarily "hard" financial reporting results for PSSI, as opposed to forward-looking projections or future financial analysis. *Compare Theoharous,* 256 F.3d at 1225; *Harris,* 182 F.3d at 803. Moreover, even if the Defendants can ultimately claim protection under the PSLRA's safe harbor for forward-looking statements, the Court finds that at this stage of the litigation the Plaintiffs have sufficiently alleged that the Defendants made the statements with "actual knowledge" that they were "false or misleading," in that Plaintiffs aver that the Defendants knew they were "cooking the books" in order to make such statements. *See* 15 U.S.C. 78u–5(c)(1)(B); *Harris,* 182 F.3d at 803.

■ The Court also disagrees with the Defendants regarding the loss causation element of securities fraud. The Court finds that the Plaintiffs have averred that the Defendants' misrepresentations or omissions caused the Plaintiffs' to purchase the inflated stock, and that the Defendants' fraud in committing GAAP violations and improprieties was part of a course of conduct that was ultimately the proximate cause of the Plaintiffs' loss. *See Robbins,* 116 F.3d at 1447 (citations omitted); *see also In re Checkers,* 858 F.Supp. at 1177; *In re MicroStrategy, Inc.,* 115 F.Supp.2d at 658; *In re Paradyne Networks, Inc.,* 197 F.Supp.2d at 1356–57; *compare In re Towne Svcs.,* 184 F.Supp.2d at 1326. In any event, the Court agrees with the Plaintiffs that proof of loss causation should not typically be resolved on a Rule 12(b)(6) motion, as here the Plaintiffs have adequately alleged that their financial loss is connected to the Defendants' fraudulent conduct.

■ Lastly, the Plaintiffs have alleged that the Individual Defendants had the requisite "power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws ... [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability." *In re Sunterra,* 2002 WL 480620 at *6 (quoting *Brown,* 84 F.3d 393 at 396). In fact, the Plaintiffs have alleged that the Individual Defendants—both individually and part of the group making up the PSSI control structure—were directly responsible for the allegedly fraudulent statements at issue. *See In re Checkers,* 858 F.Supp. at 1178; *In re Sunbeam,* 89 F.Supp.2d at 1341. As the Plaintiffs have adequately pled primary violations under the Securities and Exchange Act, this Court will not dismiss their claims against the Individual Defendants pursuant to Section 20(a) of the Act. *See Brown,* 84 F.3d at 396–97.

Accordingly, upon due consideration, it is hereby **ORDERED** and **ADJUDGED** that:

1. The Defendants' Motion to Dismiss Amended Class Action Complaint (Dkt.36) is **DENIED.**

2. The Defendants shall file an answer to the Plaintiffs' Amended Class Action Complaint (Dkt.29) within ten (10) days of the date of this Order.